## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
## WHEELING

**MUSTAFA OZUSAMLAR,**

           Petitioner,

v.   **Civil Action No.: 5:19cv155**
    (Judge Bailey)

**F. ENTZEL,**

           Respondent.

## REPORT AND RECOMMENDATION

### I.   INTRODUCTION

On April 25, 2019, Mustafa Ozusamlar, acting *pro se*, filed a Petition for Habeas Corpus Pursuant to 28 U.S.C. § 2241 [ECF No. 1] (the "Petition"). On April 29, 2019, the petitioner paid the $5 filing fee. The petitioner is a federal inmate housed at FCI Hazelton and is challenging the validity of his conviction from the Southern District of New York. The matter is currently pending before the undersigned for a Report and Recommendation pursuant to LR PL P 2. For the reasons set forth below, the undersigned recommends that the petition be dismissed for lack of jurisdiction.

### II.   BACKGROUND[1]

Following a two-week trial the Petitioner was convicted on May 14, 2004 of six counts: (1) conspiracy to bribe a public official in violation of 18 U.S.C. § 371; (2) bribery

---

[1] Unless otherwise noted, the information in this section is taken from the Petitioner's criminal docket available on PACER and all ECF numbers are from that case. See United States v. Ozsusamlar., 02-cr-763 (SDNY). Philips v. Pitt Cnty. Mem. Hosp., 572 F. 3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of public record); Colonial Penn. Ins. Co. v. Coil, 887 F.2d 1236, 21239 (4th Cir. 1989) ("We note that 'the most frequent use of judicial notice is in noticing the contents of court records.'").

of a public official in violation of 18 U.S.C. § 201(b)(1)(B) and (b)(1)(C); (3) conspiracy to commit fraud in connection with identification documents in violation of 18 U.S.C. § 1028(f); (4) fraud in connection with identification documents in violation of 18 U.S.C. § 1028(a)(1), (b)(1)(a)(ii) and (c)(3); (5) conspiracy to transport illegal aliens in violation of 18 U.S.C. § 1324(a)(1)(A)(v)(I); and (6) transportation of illegal aliens in violation of 8 U.S.C. § 1324(a)(1)(A)(ii) and (v)(II).

      The charges against the petitioner were the result of a long-term FBI investigation that found that the petitioner and his codefendant ran a fraudulent identification document ring from the beginning of 2000 through the middle of 2002. The focus of their conspiracy was providing genuine Washington, D. C. driver's licenses for illegal aliens, which the petitioner and his co-defendant fraudulently obtained by bribing a window clerk employed by the Washington, D.C. Department of Motor Vehicles ("DCDMV") to circumvent normal DCDMV security protocols. The petitioner and his co-defendant solicited these customers through a variety of means and provided transportation from the New York area down to Washington, D.C. for the purposes of obtaining the fraudulent licenses. Upon arrival at the DCDMV, the petitioner and his co-defendant filled out the DMV paperwork for the "customers," accompanied them into the DCDMV and escorted them to window space where Gwendolynn Dean was working. Dean then approved those applications without requiring from the customers proof of identity or residence. Those applicants were handed a genuine, Government-issue driver's license. Dean's complicity in this scheme was secured by cash bribes the petitioner and his co-defendant paid to her. The petitioner and his co-defendant then transported the aliens back to New York. At trial, the government proved, over the

course of the 2 ½-year conspiracy, the petitioner and his co-conspirators fraudulently obtained over nine hundred Washington, DC driver's license through the payment of bribes the aggregate value of which exceeded one million dollars. See ECF No. 122.

On December 5, 2001, at the same time the FBI was investigating the petitioner, he was arrested, along with approximately eight of his "customers," when he was caught in a chance encounter with the DC police during one of his illicit van trips. The petitioner was charged in the District Court for the District of Columbia with various offenses stemming from his December 5, 2001 arrest. See United States v. Ozsusamlar, No. 1 Cr. 466(EGS). In 2007, after the petitioner's conviction in the New York case, the district court granted the United States Attorney's Office for the District of Columbia's motion to dismiss the indictment against the petitioner. Id.

In advance of sentencing, the United States Probation Office calculated that the petitioner's offenses resulted in a combined total offense level of 35, after grouping analysis which considered all six counts. The Probation Office included in the calculation, among other things, enhancements based on the petitioner's leadership role in the offenses (4 levels), the value of the bribes exceeding one million dollars (16 levels), the fact that the alien transportation scheme involved more than 100 illegal aliens (9 levels), and the petitioner's obstruction of justice for, among other things, lying in a sworn affidavit filed with the court (2 levels). Because the petitioner had a 1995 federal conviction for harboring and transporting aliens, and because he committed the instant offenses while on supervised release for that crime, the PSR placed him in Criminal History Category III. Based on an offense level of 35 and a Criminal History Category of III, the Petitioner's Sentencing Guidelines range was 210 to 262 months

imprisonment. ECF No. 122 at p. 7.

On February 1, 2007, the Petitioner was sentenced to a total term of 235 months imprisonment, the middle of the applicable Guidelines range, with credit for time served on the charges in in the Indictment, to be followed by three years of supervised release. In addition, the judgment also required him to pay a fine of $20,000. ECF No. 94. The petitioner's current projected release date is October 28, 2032 via good conduct time.[2] See www.bop.gov/inmateloc/.

On February 5, 2007, the petitioner filed a Notice of Appeal. The United States Court of Appeals for the Second Circuit affirmed the conviction without published opinion on May 22, 2008. United States v. Ozsusamlar, 278 F. App'x 75 (2d Cir. 2008). The petitioner did not seek review by the United States Supreme Court.

On April 7, 2009, the petitioner filed an application for a writ of habeas corpus pursuant to 28 U.S.C. 2255. Among other things, the petitioner claimed that his (1) his sentence was unreasonable; (2) delays in trial violated his Sixth Amendment right to a speedy trial; (3) arresting officers questioned him without reading him his Miranda rights; and (4) his trial counsel provided ineffective assistance at sentencing. In particular, the petitioner claimed trial counsel failed to (1) present evidence in mitigation of his sentence; (2) inform the government or the court that he was working as an informant with the Immigration and Naturalization service regarding an alien smuggling operation and (3) inform the Government that he could provide information concerning two unsolved murders. The district judge denied this application on January 7, 2010.

---

[2] The petitioner has also been sentenced to 188 months imprisonment based on a 2006 conviction for conspiracy to commit murder for hire, and conspiracy to commit extortion. That sentence was ordered to run consecutively to his 235 months sentence. See 1:05cr01077-RA-1 (SDNY).

Ozsusamlar v. United States, 2010 WL 69106 at *3.

The petitioner timely appealed from the District Court's order and, while his appeal was pending, he filed a motion in the District Court seeking leave to file a second habeas corpus petition. ECF No. 116. The motion did not attach the draft pleading the petitioner sought to file, but described the new claim as follows: "The particular claim involves trial counsel's failure to challenge material testimony from government witnesses where exculpatory (unused) evidence would have demonstrated, inter alia, that someone other than he committed the crime). Id. On April 19, 2010, the petitioner also filed a motion in the Court of Appeals to stay the appeal from the denial of his initial 2255 petition until the district judge decided his motion for leave to file a second 2255 petition. (Doc. No. 20 in Docket No. 10-0497 (2d Cir.)).

On June 10, 2010, the district judge denied the Petitioner's motion to file a second 2255 petition, reasoning that such an application had to be made to the Court of Appeals. ECF No. 117. On July 15, 2010, the Court of Appeals denied the Petitioner a certificate of appealability from the district judge's decision denying his initial 2255 petition and denied his motion for a stay. Doc. No. 29 in Docket No. 10-0497 (2d Cir.). On July 28, 2010, the Court of Appeals denied the Petitioner's motion for leave to file a second 2255 petition, finding that pursuant to Whab v. United States, 408 F.3d 116 (2d Cir. 2005), the district court had jurisdiction to entertain the application because the appeal from the denial of the Petitioner's initial 2255 motion was still pending when he sought leave to file a second 2255 motion.

On September 8, 2010, the petitioner filed a motion which was construed as an application to seek to amend the original petition with two claims: (1) trial counsel was

ineffective for failing to object to Government Exhibit 71--a letter by the petitioner—on the grounds that (1) its admission violated a Kastigar agreement, (b) the admissions contained therein were not made knowingly and intelligently and (c) the letter constituted a statement made in the course of unsuccessful plea discussions in another matter and (2) trial counsel was ineffective for failing to cross-examine four witnesses with certain facts that purportedly contradicted their direct testimony.

The district court found that the petitioner's new claims did not relate back to his original petition and, as a result, were time barred. ECF No. 126. Accordingly, the petitioner's motion to amend was denied. It does not appear that the petitioner appealed this decision.

### III. STANDARD OF REVIEW

#### A. Review of Petitions for Relief

Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and this Court's local rules, the undersigned is authorized to review such petitions for relief and submit findings and recommendations to the District Court. This Court is charged with screening the petitioner's case to determine if "it plainly appears from the petition and any attached exhibits that the petitioner is not entitled to relief in the district court." Rule 4, Rules Governing Section 2254 Cases in the U.S. District Courts (2014); see also Rule 1(b) Rules Governing Section 2254 Cases in the U.S. District Courts (2014) (a district court may apply these rules to a habeas corpus petition not filed pursuant to § 2254).

#### B. Pro Se Litigants

As a *pro se* litigant, the petitioner's pleadings are accorded liberal construction

and held to less stringent standard than formal pleadings drafted by attorneys. See Erickson v. Pardus, 551 U.S. 89, 93-94 (2007) (per curiam). However, even under this less stringent standard, the petition in this case is subject to summary dismissal. The requirement of liberal construction does not mean that the Court can ignore a clear failure to allege facts which set forth a claim cognizable in a federal district court. See Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990). As discussed more fully below, the petitioner clearly is not entitled to relief under 28 U.S.C. § 2241, and therefore, no response has been required of the Respondent.

## IV.     CLAIMS OF THE PETITION

Although not a model of clarity, it appears that the petitioner is raising several grounds in support of his petition. First, he alleges that he was the victim of criminal injustice, racial discrimination and corruption. He also appears to allege that he is not the same Mustava[3] and should not have been tried in the Southern District of New York. He also makes vague assertions of violations of the speedy trial act and ineffective assistance of trial and appellate counsel. In addition, he alleges that his sentence was not calculated properly and was disproportionate to that of his co-defendant. The petitioner requests no specific relief, but the undersigned assumes he wants his conviction set aside and/or his sentence reduced.

## V.     ANALYSIS

Title 28, United States Code, Sections 2241 and 2255 each create a mechanism by which a federal prisoner may challenge his or her detention. However, the two sections are not interchangeable. Prisoners seeking to challenge the validity of their

---

[3] It appears the petitioner alleges that the real criminal is Mustafa Bayrampsan, who was released and escaped to Turkey. The petitioner contends that he is paying his jail time.

convictions or their sentences are required to proceed under section 2255 in the district court of conviction. Rice v. Rivera, 617 F.3d 802, 807 (4th Cir. 2000); In re Vial. 115 F.3d 1192, 1194 (4th Cir. 1997).

Under § 2255, a prisoner may move the sentencing court "to vacate, set aside or correct" his sentence if he claims it "was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255(a). Second or successive petitions pursuant to § 2255 must be certified by the appropriate court of appeals. Id. § 2255(h). Courts of appeals grant such requests only if newly discovered evidence establishes "by clear and convincing evidence that no reasonable factfinder would have found the movant guilty" or that a previously unavailable "new rule of constitutional law' has been "made retroactive to cases on collateral review by the Supreme Court." Id.

A petition for writ of habeas corpus pursuant to § 2241, on the other hand, is intended to address the **execution** of a sentence, rather than its validity, and is to be filed in the district where the prisoner is incarcerated. Examples of an appropriate use of § 2241 include "actions challenging the computation of parole, computation of good time or jail credits, prison disciplinary actions, or imprisonment allegedly beyond the expiration of a sentence." Anderson v. Pettiford, 2007 WL 15777676 (D.S.C. May 31, 2007) (internal citations omitted).

While the terms of § 2255 expressly prohibit prisoners from challenging their convictions and sentences through a habeas corpus petition under § 2241, in limited circumstances, when a § 2255 is an "inadequate or ineffective remedy," § 2255's

8

savings clause permits petitioners to bring a collateral attack pursuant to 28 U.S.C. § 2241. In re Vial, 115 F.3d at 1194, n.5; In re Jones, 226 F.328, 333 (4th Cir. 2000.) However, "[i]t is beyond question that § 2255 is not inadequate or ineffective merely because an individual is unable to obtain relief under that provision," including because of a procedural bar. Id.

When contesting a conviction, a petitioner bears the burden of demonstrating that the § 2255 remedy is inadequate or ineffective, and the standard is an exacting one. In the Fourth Circuit, a petitioner asserting "actual innocence" may establish "that §2255 is inadequate or ineffective to test the legality of a conviction" if he can prove:

> (1) at the time of conviction, settled law of this circuit or of the Supreme Court established the legality of the conviction; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the substantive law changed such that the conduct of which the prisoner was convicted is deemed not to be criminal; **and** (3) the prisoner cannot satisfy the gate-keeping provisions of § 2255 because the new rule is not one of constitutional law.

In re Jones at 333-34 (emphasis added).

However, "[t]he text of the savings clause does not limit its scope to testing the legality of the underlying criminal conviction." United States v. Wheeler, 886 F.3d 415, (4th Cir. 2018), *reh'g en banc denied* June 11, 2018 (quoting Brown v. Caraway, 719 F.3d 583, 588 (7th Cir. 2013)). In Wheeler, the Fourth Circuit concluded that § 2255(e) provides "an avenue for prisoners to test the legality of their sentences pursuant to § 2241, and Jones is applicable to fundamental sentencing errors, as well as undermined convictions." Id. at 428. When contesting a sentence through a petition filed under § 2241, a petitioner still must meet the savings clause of § 2255. In the Fourth Circuit, § 2255 is deemed to be "inadequate and ineffective" to test the legality of a sentence only

9

when all four of the following conditions are satisfied:

> (1) at the time of sentencing, settled law of this circuit or the Supreme Court established the legality of the sentence; (2) subsequent to the prisoner's direct appeal and first § 2255 motion, the aforementioned settled substantive law changed and was deemed to apply retroactively on collateral review; (3) the prisoner is unable to meet the gatekeeping provisions of § 2255(h)(2) for second or successive motions; **and** (4) due to this retroactive change, the sentence now presents an error sufficiently grave to be deemed a fundamental defect.

Wheeler, supra, at 429 (emphasis added). The Fourth Circuit further specified that a change of the substantive law within the circuit, not solely in the Supreme Court, would be enough to satisfy the second prong of the four-part test established in Wheeler. Id.

Although Petitioner has not raised the savings clause, he is not entitled to its application. First, to the extent that the Petitioner is challenging his conviction, even if he satisfied the first and third elements of Jones, the crimes for which he was convicted remain criminal offenses, and therefore, he cannot satisfy the second element of Jones.[4] To the extent the Petitioner is attempting to challenge his sentence, the Court must review the petition under the four-part Wheeler test. As to the first prong, it is clear that at the time of sentencing, settled law established the legality of the sentence imposed. However, the Petitioner cannot meet the second element of the Wheeler test because he cites no change to the settled law which established the legality of his sentence, let alone a change that has been deemed to apply retroactively to cases on collateral review.

---

[4] The claims raised by the Petitioner do not remotely satisfy the savings clause. They are clearly allegations that were raised in his several motions filed with the sentencing court or should have been so raised.

10

Consequently, because the petitioner attacks the validity of his conviction and sentence and fails to establish that he meets the Jones or Wheeler requirements, he is unable to satisfy the § 2255 savings clause to seek relief under § 2241. Where, as here, a federal prisoner brings a § 2241 petition that does not fall within the scope of the savings clause, the district court must dismiss the unauthorized habeas motion for lack of jurisdiction. Rice, 617 F.3d at 807.

## VI. RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the petition [ECF No. 1] be **DENIED** and **DISMISSED WITHOUT PREJUDICE FOR LACK OF JURISDICTION**.

The petitioner shall have fourteen days from the date of filing this Report and Recommendation within which to file with the Clerk of this Court, **specific written objections, identifying the portions of the Report and Recommendation to which objection is made, and the basis of such objection.** A copy of such objections should also be submitted to the United States District Judge. Objections shall not exceed ten (10) typewritten pages or twenty (20) handwritten pages, including exhibits, unless accompanied by a motion for leave to exceed the page limitations, consistent with LR PL P 12.

**Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.** Snyder v. Ridenour, 889 F.2d 1363 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984).

This Report and Recommendation completes the referral from the district court.

The Clerk is **DIRECTED** to terminate the Magistrate Judge's association with this case.

The Clerk of the Court is further **DIRECTED** to mail a copy of this Report and Recommendation to the *pro se* petitioner by certified mail, return receipt requested, to his last known address as reflected on the docket sheet.

**DATED**: February 4, 2020

*/s/ James P. Mazzone*
JAMES P. MAZZONE
UNITED STATES MAGISTRATE JUDGE